UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 2:15-CR-107-002 |
| | ) | JUDGE JORDAN |
| VICTOR HUGO RAMIREZ-VARGAS | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Victor Hugo Ramirez-Vargas, and the defendant's attorney, Marsha M. Arnurius have agreed upon the following:

1. The defendant will plead guilty to the following counts in the superseding indictment:

   a) Count One, that is, a conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).

   The punishment for this offense is as follows: The maximum penalty to which the defendant will be exposed by virtue of the guilty plea is a minimum mandatory term of imprisonment of ten years up to life, a fine of up to $10,000,000.00, a term of supervised release of at least five years to life, and a mandatory assessment of $100.00.

   b) Count Two, that is, conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1),(b)(1)(A).

1

The punishment for this offense is as follows: The maximum penalty to which the defendant will be exposed by virtue of the guilty plea is a minimum mandatory term of imprisonment of ten years up to life, a fine of up $10,000,000.00, a term of supervised release of at least five years to life, and a mandatory assessment of $100.00.

2. The defendant has read the superseding indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees to the following: As to Counts One and Two, the defendant agrees that each of the following elements of the crime must be proven beyond a reasonable doubt: (1) An agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy.

3. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this superseding indictment.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) Through the testimony of numerous witnesses, the United States would demonstrate, beyond a reasonable doubt, that beginning in approximately April of 2012 and continuing to on or about October 14, 2015, in the Eastern District of Tennessee and elsewhere,

2

the defendant did knowingly, intentionally, and without authority, conspire to distribute and possess with the intent to distribute at least 5 but less than 15 kilograms of cocaine and approximately 1.4 kilograms (actual) of methamphetamine, both being Schedule II controlled substances.

b) On July 17, 2014, a confidential informant working on behalf of law enforcement called co-defendant Miguel Martinez to arrange a seven ounce cocaine purchase. Martinez said he had to call someone to bring the requested cocaine and told the informant to come by 2040 Rosella Street in Morristown, Tennessee to pick up the cocaine. Martinez called the defendant, and shortly thereafter, surveillance agents observed a white Chevrolet truck registered to the defendant arrive at 2040 Rosella Street. The informant then traveled to 2040 Rosella Street and purchased the seven ounces of cocaine from Martinez. Meanwhile, when the defendant left Martinez, he was followed by surveillance agents to 2552 Derby Way in Sevierville, then to a Dollar General store and then to the Douglas Dam lakefront. An undercover surveillance officer approached the defendant and asked to borrow the phone sitting on the picnic table next to the defendant in an attempt to identify the phone number. The defendant refused. Within moments of the undercover agent leaving the defendant at the lakefront area, other agents dialed the same number that Martinez had called earlier to obtain the seven ounces of cocaine to sell to the informant. Surveillance agents at the lakefront area observed the defendant pick up and answer the cell phone sitting next to him that was dialed by law enforcement agents.

c) On April 7, 2015, co-defendant Morales placed a Title-III intercepted call to the defendant. During the call, Morales discussed with the defendant in numerical terms the ounces of methamphetamine that he had for sale. Morales also told the defendant that he had a customer

3

who had asked for seven ounces of methamphetamine.

d) On April 15, 2015, Morales placed a Title III intercepted call to the defendant. During the call, the defendant asked Morales if had gotten rid of a quantity of methamphetamine. Morales accounted for the ones he sold and told the defendant that he would collect the money on the ones that were outstanding so the defendant could have the money together for their source of supply to repay or purchase additional amounts.

e) On April 18, 2015, a number of Title III calls between Morales and an unindicted co-conspirator were intercepted. The unindicted co-conspirator asked how much Morales would sell the "whole food" to him and Morales said he was going to leave it at 1:1 so he could earn "50". They agreed to meet later. Subsequent Title III calls were intercepted between Morales and the defendant on the same day. During these calls, Morales said he would be able to sell to another guy. Later that day, in a Title-III intercepted call, the unindicted co-conspirator told Morales that he had left the "errand" with his daughter at the house. They agreed to meet later. Surveillance officers gathered at 1381 Taft Street. At 5:11 pm, Morales arrived in his red Kia. In a subsequent Title III intercepted call, Morales called the unindicted co-conspirator to let him know that he was outside his house. Surveillance officers then observed the co-conspirator come out of the apartment and walk to meet Morales at his vehicle.

f) On April 27, 2015, the defendant called co-defendant Antonio Morales in a Title III intercepted call and reported that he had learned ten individuals were going to be arrested within the next 15 days, including him and Morales. Morales and the defendant talked about laying low for the month of May and the defendant said he felt like he was being followed. The defendant said he was going to live in Knoxville because if the police put pressure on another individual,

4

then he would talk. The defendant told Morales they were not safe and that the "dude" told him "you guys are not safe," that it was "both of you… and eight more." Morales told the defendant, "this thing is bad." The defendant repeated they needed to leave town. The defendant told Morales that "his sister told him" that "they did not know who wore the biggest sombrero, if you or I, man…" and that they were "confused, that they don't know who is the one that wears the sombrero, the biggest one," claiming that the police did not know who the bigger drug dealer was: the defendant or Morales.

g) The evidence shows that on April 28, 2015, an undercover agent and an informant met with co-defendant Jesus Altamirano at 133 Cracker Barrel Road in Morristown. The meeting was supposed to be between co-defendant Antonio Morales and the undercover agent. However, Morales did not show up for the meeting. The undercover agent told Altamirano that he needed three kilograms of cocaine and that he had previously discussed this with Morales. The undercover agent and Altamirano negotiated the price per kilogram of cocaine between $31,000 and $35,000, but Altamirano said he would have to confirm the price with his "guy," the defendant. At the conclusion of the meeting, the undercover agent showed Altamirano a compartment in the bed of his vehicle and $100,000.00 in cash for the purchase of the three kilograms of cocaine, based upon the prior discussion between the undercover agent and Morales about how they were going to conduct deals in the future. Altamirano told the undercover agent that they would be in touch about the price after he talked with his guy, the defendant. The defendant admits that he supplied co-defendant Altamirano with quantities of cocaine and methamphetamine for resale.

h) On April 29, 2015, two undercover law enforcement officers met with Altamirano at the Morristown Home Depot and purchased approximately two ounces of methamphetamine

5

for $2,600.00 from him in a recorded and surveilled transaction. Altamirano called the defendant after the transaction was over to make arrangements to deliver money to him from the sale of the methamphetamine.

  i) On April 30, 2015, law enforcement officers attempted to serve an arrest warrant on the defendant after he left his residence in Bybee, Tennessee. The defendant fled from law enforcement. As the defendant's vehicle was ultimately stopped, a law enforcement officer pulled his vehicle in front of the defendant's vehicle. When an officer then approached the defendant's vehicle on foot, the defendant made an abrupt maneuver to pull back out again. Agents had to pursue the defendant's vehicle and it was stopped again shortly thereafter and the defendant was placed under arrest. The defendant waived his *Miranda* rights, gave consent for officers to search his residence and told his girlfriend, who was at his house, that it was okay for officers to come inside and search. The defendant's girlfriend subsequently also gave both verbal and written consent to search their residence. Inside the residence, officers found large quantities of methamphetamine and cocaine. Agents also found a loaded Ruger LCP 380, an unloaded Raven, .25 caliber pistol and additional rounds of .380 ammunition. The methamphetamine seized from the defendant's residence was 223.2 net grams of methamphetamine (purity of 95.8 percent) for an actual amount of methamphetamine of 213.8 grams. The cocaine seized from the defendant's residence was 563.8 grams of cocaine. The Ruger LCP 380 caliber pistol with a magazine and ammunition was located under a bed in the defendant's bedroom with a few small baggies of drugs and some fraudulent ID documents. In a living room next to that, agents found the Raven .25 caliber pistol with an empty cartridge, additional 380 ammunition and approximately 21 individual wrapped baggies of cocaine. In

6

another nearby room, the kitchen, agents located approximately 10 baggies of methamphetamine. In another room next to that one, agents located additional drugs, a kilogram press that was approximately six feet tall and a digital scale. A receipt from Bank of America showing a deposit of $6,000.00 was found on the defendant's person. The parties agree that the two level enhancement pursuant to Section 2D1.1(b)(1) applies in this case and that an enhancement pursuant to 3B1.1 does not apply to this case.

j) On April 30, 2015, the defendant was again fully advised of his *Miranda* rights, executed a written Waiver and gave a statement to law enforcement agents. In his statement, the defendant admitted that all of the drugs found inside his residence in Bybee during the search belonged to him. In so doing, the defendant made it clear that he took full responsibility for all the drugs inside the residence and stated that his live in girlfriend was not responsible for them.

k) The defendant admits that he has been deported from the United States back to Mexico a total of five prior times. On the most recent occasion, the final order of deportation was issued for him on January 7, 2013 from Nogales, Arizona and he was deported on February 5, 2013.

l) The defendant agrees and stipulates that he conspired to distribute and possess with the intent to distribute approximately 5 kilograms of cocaine and approximately 1.4 kilograms of actual methamphetamine between April 2012 and October 14, 2015 in the Eastern District of Tennessee and elsewhere. The defendant further agrees that 5,000 grams of cocaine converts to 1,000 kilograms of marijuana and 1,400 grams of actual methamphetamine converts to 28,000 kilograms of marijuana. Overall, the defendant agrees that he is accountable for 29,000 kilograms of marijuana.

7

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's

8

guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's

9

Case 2:15-cr-00107-RLJ-DHI   Document 201   Filed 06/20/16   Page 9 of 14   PageID #: 669

nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of Title 21 United States Code Sections 846 and/or 841, and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

10. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any

other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a)    If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)    The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)    If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant

11. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for

Case 2:15-cr-00107-RLJ-DHI Document 201 Filed 06/20/16 Page 11 of 14 PageID #: 671

the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct not known to the defendant by the time of the entry of judgment and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. The defendant agrees that he is a removable alien and agrees to a judicial order of removal. The defendant waives any and all forms of relief from removal or exclusion, and agrees to abandon any pending applications for such relief and to cooperate with the Department of Homeland Security during removal proceedings. The defendant further agrees to obtain any

travel documents, including but not limited to identification documents and passport, necessary to facilitate the defendant's return to his country of origin.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-

Case 2:15-cr-00107-RLJ-DHI   Document 201   Filed 06/20/16   Page 13 of 14   PageID #: 673

referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

NANCY STALLARD HARR
ACTING UNITED STATES ATTORNEY

6-20-16
Date

By: *(signature)*
DONALD WAYNE TAYLOR
Assistant United States Attorney

6-17-16
Date

*VICTOR HUGO RAMIREZ Vargas*
VICTOR HUGO RAMIREZ-VARGAS
Defendant

6-17-16
Date

*(signature)*
MARSHA M. ARNURIUS
Attorney for the Defendant

14